The court is now in session. Good morning everyone. Mr. Williams, when you're prepared, please proceed. Thank you, Your Honor. Good morning, Your Honors. My name is Mark Williams. I'm attorney for Appellant Erickson Cabin, LLC. Appellant is coming before you today seeking the reversal of the district court's ruling on a summary judgment motion filed by appellees Busey Bank and Garrett Bradley and Brian Schulte. The district court granted summary judgment on the grounds that, saying that, appellant did not meet its burden regarding two elements of the four in a slander of title case. The three and four elements, as this court knows, are the publication of words with malicious intent and a pecuniary loss by the appellant as a result of that publication. I'd first like to talk about the fourth element, which is the pecuniary loss. As the court knows... Counselor, can I ask you to talk about the third one first? Would you mind doing that? Nope, not at all, Your Honor. Okay, good. Thank you. Thank you for coming. And my question, my know, under Missouri law, it says that innocent or ignorant words is what the modern cases say. The old cases say stupidity or ignorance is the... ancient cases in this line. But they say they're definitely not malicious, not malice at all. And what do you have here, we're at summary judgment stage, what do you have to show that this was anything other than innocent, stupid, and ignorant? Your Honor, I think... Your Honor, that's a very good question. I think you look at the totality of the evidence before the district court. And that is, first and foremost, we're dealing with two individuals in a banking institution in the state of Illinois who clearly state in their depositions and also in their affidavits that for most of their working life they've been in the banking business. And because of that, there are as many ways that they could have When you file this full deed of release on a piece of property in the state of Missouri, you are telling the world that this is free and clear of any liens or encumbrances, which was actually in the body of the full deed of release. They did so without using all the resources they had before them to determine whether or not the predecessor in their title, Blaskey Bank, actually had a valid lien on this property. What takes that, what you just described, above the level of negligence? Is negligence enough under Missouri law? Your Honor, I don't think negligence is enough to prove malicious intent. And I think that is exactly why Pelley's have continually argued, sorry, we just made a mistake. We're sorry, just made a mistake. That's what they say over and over. That's what they said in their briefs on the summary judgment motion. And that's what they've said in the brief to this court. So I think we have to go above negligence and I think that's the malicious issue. So what we would argue is because of the experience that Mr. Schulte and Mr. Bradley have in the banking institutions, specifically related to the real estate transactions, that their actions went to reckless disregard of what they were doing. And that gets us above the negligence and gets us into the malicious intent issue, which we believe the totality of the evidence shows that there is... Is there Missouri law to the effect that a reckless conduct is sufficient for malicious, for the malicious standard? Your Honor, I couldn't find that case. As Judge Benton pointed out, what I found is the words of, and I think Bechtel and his prodigy talked about that, where it talks about ignorance and stupidity and uses those types of words. So I don't know that, you know, I have a case that I can cite before you that talks about the reckless disregard, but I think we have to, as plaintiffs in this case, to show the malicious intent, go to that level. I would concede that negligence, I believe, is not enough because it would just be a, you know, some sort of negligence claim that we could have filed against BC Bank for just violating the duty that they had to make sure that the deed of trust was in fact still in place and or had been assigned to another bank, which obviously they did not do until over a year later after they had filed the full deed of release. But I think, again, I would argue, as I argued for the district court, the totality of the circumstances, the totality of the evidence on this malicious issue shows, in our opinion, that there is a genuine issue as to this fact of malicious intent, and this is an issue that should go before the jury. The jury should be the one- Mr. Williams, what else? You've talked about sort of the knowledge that these experienced bankers, you believe, should have, and you've alleged that. What else do you have beyond that from which a jury could infer or find, you know, or infer from other circumstances that there was, in fact, malice? What else have you got other than the two people themselves and what they do as bankers? Well, Your Honor, I believe we have, by their own words, they made assumptions in this case. They assumed that since they could not find something in their own internal records, that the promissory note had been paid off and therefore gave them authority to file this full due to release. We have that evidence, Your Honor. We also have the fact that Mr. Bradley had been in with Bucy Bank at the time that the transition from Pulaski to Bucy Bank. He knew, and he acknowledged in his deposition, that he knew that Pulaski Bank almost immediately sold their loans on the third-party market, which would then, based on any training experience of a banker who is in retail real estate loan transactions, should know that there are other methods to find out whether or not a third-party bank has an interest in this land, and that's the MERS system. And he did not avail himself of that MERS system, which then, as the court knows from the April 2018 emails, he immediately, upon Mr. Erickson talking to him, went to another department within his own bank and they did a MERS system search. All that was available to him, and he did not avail himself, even though he knew that Pulaski Bank immediately sold loans on the third-party market. So I have that evidence, Your Honor. It was clear that the MERS system showed them immediately that there was another bank out there that may have an interest in this land, and that's Nation Star. That sounds like knew or should have known. Is that what you're arguing? I'm arguing that he did know, Your Honor. I think based on his training experience, he's basically testifying in his deposition that during his entire adult life, he's been in the banking business, he knew there was other methods and other ways to find out whether or not another bank had an other ways to find out more information and that to say that he knew that what they were actually presenting was false? Yeah, I would say, I mean, I understand your question. I would say that to protect himself from not making a false declaration in a deed of release, he should have availed himself of methods that he knew were available to him so that he would not make a false declaration. I hope I answered that question. Next, Your Honors, we have the fact that by his own admission in April of 2018, after he had members of his bank do the MERS system research and find out that there may have been an interest in the land with Nation Star, Mr. Bradley did nothing, nor did Mr. Schulte, to rectify the filing of that full deed of release. They did not go to the legal department. They did nothing but rely upon Mr. Erickson, who is a member of the LLC, which is appellant, to, I guess, tell him, you know, what can we do for you now? Well, it's clear my client's not a, you know, a member of my client is not a lawyer. He's not, there's nothing in the record to say my client is an expert in real expertise, and the record shows that. They knew exactly what would happen when they filed that full deed of release, that this would tell the world, and especially in this situation where you have an attorney out of the state of Iowa, asking them whether or not this bank has an interest so they can foreclose on this piece of property. That, in and of itself, should have, you know, brought the importance of this issue of whether there was a lien to the forefront of their mentality, in our opinion, and that is all clear in the jury. Looking at how they acted and what they did, I think that's a question for the jury whether or not that was malice, versus just, as the appellee would have you find, was just simple negligence. We believe it rises much more above just simple negligence because of the expertise and experience of these two individuals that are clearly agents for Busey Bank. I don't think there's any discussion about or any misunderstanding about that. They also, your honors, I know that they filed in support of the summary judgment. They claim that the documents that they filed, both in 2018 and 2019, were done in the regular course of their business, but we know that's not true. When Martin Lay, the trustee, the new trustee for NationStar, contacts them and points out the fact that they erroneously filed a full deed of release, we have this thing called an Mr. Pratt and Ms. Schulte, they don't even know what that is. They have no clue. They never ever heard of it. They've never drafted it. They've never done anything. Yet in their affidavits, they want this court to believe, as they wanted the district court to believe, that this is something they do in the regular course of their business. Well, that's not true and that's an issue that should go for the jury on the issue of malice. They are doing things for which they know nothing about, and I think that rises well above negligence because, again, they are experienced bankers in the real estate transaction law, and that goes above and beyond just a simple duty to whether or not, hey, should we file this or not? Because, again, I point out to the court, this all started by an attorney just asking them, hey, do you want notice of a sale? That went to filing a full deed of release, which is a huge document in the state of Missouri on real estate and whether or not it is encumbered, because as somebody levying on a piece of real estate, if there is a debt on it, they may decide, well, we're not going to do that because we're not going to get anything out of this sale. We have to pay a third party first, and then we might or may not get any proceeds out of the result of the sale. But when Busey Bank then files a full duty release, now we have a piece of property that's free and clear of any debt and more than likely can satisfy whatever levy is going to be placed upon this property. Mr. Williams, does the record show who drafted that second document, the purported attempt at essentially doing away with the prior deed of release? I believe so. Where did that come from? Who drafted that? Martin Lay, who is not the attorney for Busey Bank. And so Mr. Bradley and Mr. Garrett now are relying upon attorneys for which they have no attorney-client relationship with. And again, they're filing a document for which they don't know anything about, but they're relying upon a third party in Kansas City, Missouri, that this is how you handle this situation. I see that I'm past my three minutes. I mean, I'll stop at this point in time because I think I have three minutes of rebuttal. Thank you. Mr. Eggman? Good morning. May it please the court. My name is Rob Eggman. I practice with the St. Louis law firm of Carmen McDonald, and I'm here today representing Busey Bank and two employees, Garrett Bradley and Brian Schulte. This is an unusual case on summary judgment, I think, as the court had probably picked up on, because I think you'll probably find in the briefs that really there's not much of a disagreement as to the law in a slander and title situation. We agree upon the four elements. We agree that the first two elements were stipulated to, and the second two elements are what is at issue. Second, I really don't think there's a disagreement as to the facts. What the appellants are asking this court to do is send this case back to the district court in the hopes that maybe, maybe after taking written discovery, after taking depositions of both Mr. Schulte and Mr. Bradley, and he's seen affidavits from both, that just perhaps, if you let this case get to a jury, maybe the jury is somehow going to find malice. But the problem is here, there has to be some, at least a modicum of evidence of malice in order to get beyond this, the motion for summary judgment stage, and there's nothing. There's nothing. Counsel, are you saying it's undisputed, or is it a matter of dispute that the no deed of trust at the bank when they've filed a release on a purported deed that was really not in the bank's portfolio? There's no question of fact as to that issue, Your Honor. These two individuals did not know it was false when they made this statement. In the appellant's argument, and in connection with some questions... The language I've read, though, I think this is a the Eastern District of Missouri that says that you can prove that they knew it was false or reckless disregard of whether it was true or false. And as I understand the appellant's argument, he's saying in the positions that these individuals were, if you just pick up two people off the street and ask them a question about something, that's one thing, but you get people who are actually within the bank's business operations with access to the portfolio of instruments that they hold to put out a document that seems to say they have the instrument and have released it, or had it at that time and released it, that even if they didn't know that was false, to release it without at least doing some investigation to show that it was a question of whether it was true or false, that releasing it without doing any checking was reckless and in reckless disregard to the accuracy of the representation. But, Your Honor, the undisputed facts in this case show that that's not accurate. There was an investigation, and there's no question about it, there's no dispute as to that. Mr. Bradley and Mr. Schulte engaged in an investigation of the bank's records to look to see if there was any record of a borrower by the name of Erickson coming over from Pulaski Bank to Busey Bank in the merger in 2016 and found nothing. They did a further investigation to see if there were any loan documents which would reflect perhaps there was a loan still on the books from the Pulaski days in this borrower's name, and there was not. A lot has been made out of this MERS situation. Shouldn't they have checked first? Wouldn't it have been the better thing to do is simply to write a letter and say we have no record of such a loan, as opposed to issuing a deed of release of a loan that's not there? Absolutely not, Your Honor, because if they don't have any record of the loan, and if the loan had in fact been paid in full, they had a duty under Missouri law 30 days after that loan had been paid in full to file a full deed of release, and what their record for finding is, oh my gosh, we didn't do that. So they had a duty to file that deed of release, and they were fulfilling what they thought was their statutory duty in the state of Missouri. And a lot has been made about this MERS search. Let's talk about that for a moment. Let's talk about the undisputed facts as found by Judd Bodenhausen. This gentleman from Iowa, Ed Cox, sent a title report to BC Bank. The title report, without a question of a doubt, showed that there was but one lien holder, and that was Pulaski Bank. There's no evidence to suggest anywhere in the record that that had been assigned. Mr. Williams is right. Pulaski Bank was, in fact, a very big lender in the residential home loan mortgage business before it merged with BC Bank. BC Bank, not so, but Pulaski was. But look at this type of loan. This is rural property in Putnam County, Missouri. It does not immediately jump out at you as a piece of real estate that is your typical residential mortgage in a Pulaski portfolio. Plus, the title report that was sent by Mr. Cox had no suggestion whatsoever that this had been assigned. In fact, when you look at the findings of fact by Judge Bodenhausen, jumping ahead to April 2019, he points out two events that took place in that month. The first event was the affidavit of erroneous release. The second event was the assignment from Pulaski Bank, now known as BC Bank, to Nation Star Mortgage. So there was nothing about what had taken place in 2018, March and February, that would probably ever even seize the bankers like Mr. Bradley and Mr. Schulte to lead them to believe that this was a MERS loan. Now, remember, just one month after this deed of release was filed, they heard from Mr. Erickson. Mr. Erickson set the record straight. I still do owe money to Nation Star. That set this whole thing in action. But at that point in time, the uncontroverted evidence suggests that Mr. Schulte and Mr. Bradley believed, and rightfully so, in my opinion, that if you do a quick claim deed of release and you don't have any interest in that property, you haven't given up someone else's interest in the property, you've said, I don't have an interest in the property. So whether or not there was a false statement that's affidavit, that's true, there was, because they were not the owner of the deed of trust. But the reality is, the deed of release did no harm to Nation Star, because all Busey was saying is, we are giving up any interest we may have in this property. So while it's not part of the... Well, how does the second document play into the analysis? It doesn't, Your Honor, but I'll address the second document. The malice has to be in the filing of the initial document. And if you look at the cases, especially the Bethlehem v. Epcot case, you'll note that most of these slander of title cases involve entirely different types of scenarios. Your typical slander of title case is somebody filing what I sometimes call a wild deed, or a wildless pendants, or a wild deed of trust, where it says, I've got no reason to say this, but I'm gonna file a deed, like a sovereign citizen, for example, I'm gonna file a deed of trust on someone's property, because they've wronged me. Or I'm gonna, the aboriginal sovereign citizen, which says, I'm gonna file a deed of, a warranty deed on a piece of property, saying that I'm deeding this property myself. That is a slander of title, because typically you're trying to get that property, or prevent someone else from getting that property. So this is a very rare, odd case of alleged slander, because what was happening here is, the document that was filed in 2018 didn't hurt the Eriksons. In fact, it could have helped the Eriksons. And if you go forward in the timeline, you can see that what happened was, the knew they owed money to NationStar in April of 2018, and they acknowledged this, and corrected BC Bay. Nevertheless, that same year, they did two things. Number one, they quit claiming this property to Erikson Cabin LLC, which is the plaintiff and appellants in this case. Number two, they stopped paying NationStar. Fast the affidavit of erroneous release was filed, and after a foreclosure proceeding was commenced, they entered into a contract to sell this property to Sappers for $125,000. All this action was taken after the erroneous document was filed, and some of the action was taken after the affidavit of erroneous release was filed. So still, the court has no evidence, or had no evidence before it, to that it existed in February and March of 2018, or March of 2018, when the actual erroneous document was filed. So let's look at the actions and the evidence, the uncontributed evidence that was before the court. Let me ask you, let me ask you, which category are you advocating for? Your theme in your brief was mistake, and don't say don't say mistake. I was waiting for you to say it, because we couldn't find that in any Missouri cases on slander of title. As you know, the standard is innocence, ignorance, and stupidity in the older cases. Now, which one of the three, or all three, are you claiming? It's going to be innocently and ignorantly. Ignorantly sounds like a bad word, because I think people misuse it, and sometimes exchange it for stupidity, but that's not the case. They were ignorant of a fact. They innocently recorded a deed of release, because they were ignorant of the fact that this deed of trust and note had been assigned to Countrywide, who then assigned it to Bank of America, who then assigned it to Nation Star. So we have innocence and ignorance here, and that is in the Beckley versus Advar case, which sets forth those elements. Does the concept of ignorance require some level of excusability of the ignorance? I mean, if it's information that you ought to know, or ought to have reason to know, can ignorance be a defense? I believe so, Your Honor. I think in a slander of title case, ignorance can still be a defense, especially when you have the uncontroverted evidence that the district court had here, and that was, you know, the bank was presented with a lien search, which showed just one encumbrance on the property, and the reliance on Mr. Cox and his lien search, the fact that Mr. Bradley was doing 40 to 50 lien releases a week after the merger with BC Bank, and the innocent conversations took place in April 2018 with the Erickson's, where clearly Mr. Schulte and Mr. Bradley are saying, we apologize for the error. We'll do anything we need to do to make this right, you know, and had a very, very, you know, conciliatory attitude, not to mention the fact that the uncontroverted evidence is that there was no dealings between these parties prior to April 2018. They harbored no ill will, had no idea who the Erickson's were. It was a very limited dealing that, again, was uncontroverted, and it was uncontroverted the fact that they district court. It was then the job of the appellants to shift the burden to them to prove something, that they had anything that there was malice here, and unfortunately, they did not do so. You hear a lot from the appellants about what happened after the fact, but the case law is clear. The malice has to be in connection with the filing of the erroneous or false document, and all of the evidence suggested by the appellants going forward all took place. I still don't think it amounts to malice, but everything took place after that April 2018 conversation with the parties. So this is a this is a if you trace it all the way back, this is kind of a good faith inquiry. Do you agree with that? I would. I would agree that's got some good faith elements to it. That's not sorry. It's a St. Louis Court of Appeals back when it's called that the St. Louis Court of Appeals in 1904, I think, started all this line with good faith and adding all these other words. So tell me what the other side says. Well, if they're bankers, it can have been in good faith. So why? Why doesn't that have just a smidgen of enough to get past some rejection? I think it's I think there's zero credibility to that argument that just because they're bankers that that a mistake means they didn't act in good faith. Even we lawyers from time to time make mistakes. I think we can allow the bankers to make mistakes from time to time. And you've lost two mistakes. Don't go to mistakes. Council mistakes. Not Missouri law. Go ahead. Your Honor, I stole your word. I apologize. But but in that regard, you know, I think that when one makes an innocent error or or or one due to ignorance, it's can there's not anything in the record to suggest that these these were not in good faith, not to mention the fact that there was no damage here. The idea that the that the sappers walked away from the contract because of of the filing that is the 2018 filing is not supported by the record. The record district court make a finding specifically that there were no damages. Pardon me. Real question. Yes. Judge Bowden. How's it say? No damages. I don't have the opinion right in front of me. He found that they could not sustain their burden of showing theory damages because the sappers walked away due to the due to the April 2019 filings and not due to the 2018 fire. But the 2019 filing would not have occurred without the 2018. It would not have. But that's not the standard. The filing in 2018 had to be the one with malice. So why don't you can't prove malice after the fact by the fact that they corrected an error, which is all that all the 2019 filing did was correct the error on the date of release and have the assignment recorded. Unless the court has any further questions, my time appears to be up. All right. Thank you, Mr Eggman. Mr Williams, your rebuttal. Thank you, Mr Eggman. And Pelley's would like to like everybody and especially the underlying court to disregard really the language of the affidavit of her own as deed of release, which I have no case law or anything to say, nor have I ever been to a CLE that gives me an idea of what this document even is. I don't remember learning about it in law school, quite frankly. But if you look at the first paragraph, it specifically references the full deed of release that was filed in 2018. So when the sappers say that they reference the filings of 2019, they were talking about an affidavit of erroneous release that clearly, clearly references a full deed of release that was full of false statements. Mr Eggman just talked about that this was a quick claim full deed of release, and I respectfully disagree with that. This document that was filed in April of 2018 or excuse me, March of 2018 is a full deed of release. There is no question about it. UC Bank clearly makes statements that they are the present holder and owner of a promissory note, and they were not. They had, and even in their internal investigation, they can't prove to this court nor could they prove to the district court that they had information to show that the promissory note had been paid in full. They don't know, and they did nothing to confirm that, and yet they're gonna file a document that shows a piece of property that's free and clear of any lien. Now, oftentimes there's second and third mortgages and all kinds of other stuff, especially on commercial property. The deed of release only applies to the note that's underlying it, correct? Yes, Your Honor. Okay, proceed. And that is, but Your Honor, to follow up on that question, we knew that that was the only deed of trust of record because Mr. Cox had provided UC Bank with a title search. So Mr. Eggman talks about assignments of the deed of trust. There was no record of any assignment of deed of trust. If there had been, why are we filing an assignment of deed of trust in April of 2019? Which I will then go, I think, I know everybody doesn't want to talk about what happened after 2018, but again, the totality of circumstances continue to show Busey's misconduct. They are referenced in the corporate assignment of deed of trust. They had no authority to do anything, and they knew that back in April of 2018. It's just their continued course of conduct that the jury should hear about, showing that they, with April of 2018, which clearly damaged my clients, they lost a $125,000 real estate sales. That's what happened in this case, and the Sappers clearly referenced Busey Bank in their email, and they clearly represent a 2019 filing, which clearly references a 2018 filing. For all those reasons, Your Honor, we ask that you reverse the district court and allow us to proceed in trial and present this matter to a jury. Thank you. Thank you, Mr. Williams. Thank you also, Mr. Eggman. The court appreciates both counsel's participation and argument this morning. It's been helpful in the resolution of the case as we study the record. Thank you. Counsel may be excused.